

Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW | Washington, DC 20036-3006 | tel 202.663.8000 | fax 202.663.8007

William M. Sullivan, Jr.
tel 202.663.8027
william.sullivan@pillsburylaw.com

August 21, 2015

Hon. Richard J. Sullivan (SullivanNYSDChambers@nysd.uscourts.gov)
United States District Court for the Southern District of New York
40 Foley Square
New York, New York 10007

Re:  *U.S. Securities and Exchange Commission v. Elek Straub, et al.*, No. 11-cv-9645 (RJS); Defendants' Pre-Motion Letter Regarding Summary Judgment

Dear Judge Sullivan:

This firm represents defendant András Balogh in the above-referenced action (the "Action"). Pursuant to the Sealed Opinion and Order dated August 11, 2015 (Doc. No. 197), and Rule 2.A. of this Court's Individual Practices, we write on behalf of Mr. Balogh and, with their permission, his co-defendants, Elek Straub and Tamás Morvai (collectively, the "Defendants"), regarding Defendants' anticipated summary judgment motion.

Defendants will demonstrate that they are entitled to summary judgment on the following grounds: (1) statute of limitations; (2) use of interstate commerce; and (3) personal jurisdiction. Following the close of discovery in this Action, it is clear there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law with respect to these issues.

**Statute of Limitations**. Defendants' motion for summary judgment on statute of limitations grounds will be based on two arguments: (i) the plain reading of 28 U.S.C. § 2462 in light of recent Supreme Court precedent; and (ii) the presence of two of the Defendants in the U.S. during the limitations period.

First, following this Court's Memorandum and Order denying Defendants' Motion to Dismiss, the Supreme Court issued a decision construing 28 U.S.C. § 2462 as setting a fixed date when exposure to government enforcement efforts ends. In *Gabelli v. SEC*, the Supreme Court rejected the SEC's position of imposing on Section 2462 a rule delaying the running of its statute of limitations until the SEC discovered the alleged misconduct. The Supreme Court resisted exposing defendants "to Government enforcement actions not only for five years after their misdeeds, but for an additional uncertain period into the future." 133 S. Ct. 1216, 1223 (2013). The Supreme Court also quoted Chief Justice Marshall on the importance of time limits on penalty actions, stating that it "'would be utterly repugnant to the genius of our laws' if actions for penalties could 'be brought at any distance of time.'" *Id.* (quoting *Adams v. Woods*, 6 U.S. (2 Cranch) 336, 342 (1805)).

Moreover, a thorough analysis of the language of dozens of *other* federal statutes of limitation demonstrates that when Congress intends to toll the running of the statute, it uses precise language to do so. Accordingly, here, 28 U.S.C. § 2462 should not be tolled indefinitely while Defendants were outside of the U.S. Such an interpretation would be "utterly repugnant." In light of the Supreme Court's discussion regarding the importance of time limits in penalty actions in *Gabelli*, and the demonstrated ability of Congress to expressly provide for tolling in statutes of

Hon. Richard J. Sullivan
August 21, 2015
Page 2

limitations when so desired, the only appropriate reading of Section 2462 is that it contains an absolute five year rule without tolling. The statute states that suit "shall not be entertained" "unless commenced within five years" and only "if, within the same [five year] period" the offender "is found within the United States in order that proper service may be made." Otherwise, the suit cannot be brought.

Second, at the time of the motion to dismiss, the Second Circuit had a discovery rule for Section 2462. None of the Defendants were in the U.S. after the SEC learned of the matter. However, the discovery rule was rejected by the Supreme Court in *Gabelli*, and it is now clear that two of the Defendants, Messrs. Straub and Morvai, were in the United States in the latter part of 2005 (September and October respectively), which was after the time the SEC's claims "first accrued." The evidence shows that all elements of the SEC's claims had accrued by the summer of 2005 and that Messrs. Straub and Morvai's presence within the United States occurred after the point where the claims "first accrued," and this Court has already agreed that "[i]t is undisputed that more than five years have elapsed since the SEC's claims first accrued." *See SEC v. Straub*, 921 F. Supp. 2d 244, 260 (S.D.N.Y. 2013) Accordingly, even under the SEC's reading of Section 2462, two of the Defendants were within the United States during the relevant five-year period, but this action nevertheless was not commenced until December 29, 2011.

**Use of Interstate Commerce**. Discovery has not demonstrated that Messrs. Straub or Morvai made any use of the instrumentalities of U.S. interstate commerce, nor has it demonstrated that a single innocent email sent by Mr. Balogh that independently, unknowingly, and fleetingly passed through a server in the United States was sent "in furtherance" of any alleged bribe scheme.

First, the SEC has pointed to only one email from one of the Defendants to an individual with an @hotmail.com email address: a May 31, 2005, email from Mr. Balogh, sitting in Hungary, to a colleague, Attila Szendrei, sitting in Macedonia, containing no text in the body of the email and simply attaching what discovery has shown to be an unsigned copy of the Protocol of Cooperation. This is not an email sent "in furtherance" of any alleged bribery scheme. *See SEC v. Straub*, 921 F. Supp. 2d at n.14 (concluding that the Complaint's allegations – "that Defendants sent the Protocols and Letter of Intent, which were essentially their offers to pay or promises to pay the alleged bribes, to Macedonian government officials," and that "[t]hese emails also included reference to the alleged 'sham' contracts used to conceal the true nature of Defendants' bribes" – "are sufficient to satisfy the 'in furtherance' language of § 78dd-1."). All other email messages concerning the aszendrei@hotmail.com and pejkovski@hotmail.com email addresses either do not involve any of the Defendants[1] or were not actually sent by any of the Defendants.[2]

The viability of the SEC's FCPA claim, against all three Defendants, therefore is dependent on a single email transmission, between one Defendant in Hungary and one of his colleagues in Macedonia, which attaches an unsigned copy of a legitimate – albeit nonbinding – understanding between the two main shareholders of MakTel. Discovery has not supported the SEC's allegations that this email was sent in furtherance of an alleged bribery scheme, nor has it supported the conclusion that one email sent by Mr. Balogh would implicate his co-defendants.

---

[1] The January 8, 2005 email from J. Pejkovski (pejkovski@hotmail.com) to M. Günther and the March 9, 2005 email from A. Szendrei to J. Pejkovski (pejkovski@hotmail.com) – which were identified by the SEC in its response to Defendant Straub's First Interrogatories regarding this issue – do not involve any of the Defendants.

[2] The two July 5, 2005 emails from P. Danko to A. Balogh, A. Szendrei (aszendrei@hotmail.com), and Z. Herczegh – which were identified by the SEC in its response to Defendant Straub's First Interrogatories regarding this issue – were not sent by any of the Defendants.

Hon. Richard J. Sullivan
August 21, 2015
Page 3

**Personal Jurisdiction**.  As this Court has previously acknowledged, the assertion of personal jurisdiction over Defendants in this Action "must be tested against due process standards." *SEC v. Straub*, 921 F. Supp. 2d at 252 (quoting *SEC v. Unifund SAL*, 910 F.2d 1028, 1033 (2d. Cir. 1990)).  Accordingly, the Court "must first determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction," and, once such minimum contacts are found, the Court may exercise personal jurisdiction only if "it is reasonable [to do so] under the circumstances of the particular case." *Id*. (internal quotations and citations omitted).

Even assuming, *arguendo*, that the Defendants had bare minimum contacts with the U.S. – which they did not – the undisputed facts of this case make clear that exercising personal jurisdiction over the Defendants would be wholly unreasonable.  In denying the Defendants' motion to dismiss, this Court stated that the Defendants had not "made a particular showing that the burden on them" of being forced to defend against the SEC's claims in the US "would be 'severe' or 'gravely difficult'." *See Straub* at 259.  However, now, with discovery complete, it is abundantly clear that Defendants' path has been – and will continue to be – gravely difficult.  Defendants' attempts to obtain testimony from eleven key witnesses in Macedonia and Germany were summarily rebuffed by the relevant judicial authorities in those countries, depriving Defendants of evidence critical to their defense.  The episode perfectly illustrates why subjecting Defendants to jurisdiction here in the U.S., when all of the facts, witnesses and documents even arguably relating to the SEC's allegations are located elsewhere, makes no sense and is fundamentally unreasonable and unfair.

Being forced to defend against the SEC's allegations also has been gravely difficult for the Defendants on a far more personal level:  Mr. Straub suffers from cancer, needs to undergo treatment, and has been instructed whenever possible to avoid lengthy and therefore exhausting travel outside of Europe.  And Messrs. Balogh and Morvai, both young professionals with significant family obligations, have been and will continue to be severely inconvenienced by having to defend against claims brought against them halfway around the world in a country with no connection to the factual allegations lodged against them.  It is difficult to imagine a case where, as set forth in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985), the defendants could be more "unfairly…at a severe disadvantage in comparison to [their] opponent." (Internal citation omitted.)

As to minimum contacts, we do not believe the limited management and sub-certification representations which occurred in Hungary support a conclusion of minimum contacts with the U.S. in light of the fact that all of the alleged conduct occurred in Hungary and Macedonia.  In addition, Mr. Morvai did not sign any sub-certification representations and should be granted summary judgment on that ground alone.

Sincerely,

William M. Sullivan, Jr.

cc:   All counsel of record  (by electronic email)