# EXHIBIT A

Page 1

```
                UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF NEW YORK
```

_____    :
                                     :
US SECURITIES AND EXCHANGE           : Civil Action No:
COMMISSION                           : 11-Civ-9645-RJS (S.D.N.Y.)
                                     :
              Plaintiff              :
                                     :
               -v-                   :
                                     :
ELEK STRAUB,                         :
ANDRAS BALOGH, and                   :
TAMAS MORVAI                         :
                                     :
              Defendants             :
_____        :

DEPOSITION

OF

DR. ADAM FARKAS

On Tuesday, October 7th 2014

Commencing at 9:38 am

Taken at:
White & Case LLP
5 Old Broad Street
London
EC2N 1DW
United Kingdom

Reported by: Miss Pamela Henley
Job No: 84988

Page 222

1                Dr Adam Farkas
2        Q.    And you said that Mr Dodge
3   discussed with you this case; what did he tell you
4   about this case?
5        A.    He just basically told me that the
6   SEC is pursuing a civil litigation, a civil claim
7   against three officials, former officials, I am
8   sorry, former officials of Magyar Telekom;
9   Elek Straub, Andras Balogh and Tamas Morvai.
10       Q.    Did Mr Dodge provide any documents
11  to you during that first meetings?
12       A.    In the first meeting I do not
13  recall that I did see any particular documents.
14  So I think that was it. Subsequently to that he
15  provided me with a draft letter he was trying to
16  contact Klaus Hartmann with, but there was no
17  follow up to that because I could not tell where
18  Klaus Hartmann worked.
19       Q.    And did you discuss with Mr Dodge
20  at the first or second meeting what your testimony
21  would be today?  Did you go over the topics that
22  you would discussing?
23       A.    Not in the first and second
24  meeting. In the meeting we had yesterday he
25  provided me with an outline of what documents he

1            Dr Adam Farkas
2  would use in the testimony and, sort of, a broad
3  outline of what subjects, or what topics are
4  interesting from the SEC's perspective.
5       Q.   Do you still have that document?
6       A.   Well, I got these documents of the
7  case and I got a, sort of, two pager via counsel.
8       Q.   So you were provided the actual
9  documents you looked at today as well as a two
10 page document kind of summarising what you will be
11 discussing today, or the questions you would be
12 asked today?
13      A.   No.
14      Q.   I am not clear.  Start again.
15      A.   I got copies of potential exhibits.
16      Q.   Okay.
17      A.   And I have a broad outline of the
18 topics, but not the questions --
19      Q.   I see.
20      A.   -- to be asked.  Sort of, like
21 topics of issues.
22           MR CURRIER:  That was from counsel.
23           MS LANE:  Oh, I am sorry.
24           MR DODGE:  I would raise an
25 objection to any questions relating to

1                    Dr Adam Farkas
2    communications between Dr Farkas and attorneys
3    from White & Case.
4              MS LANE:  That was not -- just to
5    be clear, that was not what I was trying to get --
6              MR CURRIER:  I was presuming
7    that --
8              MS LANE:  -- I was focusing your
9    attention to the conversations you had with
10   Mr Dodge. I am not asking you about conversations
11   you had with counsel.
12             MR SULLIVAN:  No, that is okay.  I
13   would like to know the basis for the assertion of
14   what appears to be a privilege since Mr Currier
15   said he is not here representing Dr Farkas in his
16   personal capacity, so what is the basis of the
17   relationship and the privilege that you are
18   relying on, Bob?
19             MR HILL:  Furthermore, I do not
20   think it is the SEC's province to assert
21   privilege.
22             MR SULLIVAN:  That is right.
23             MR DODGE:  I can continue to assert
24   the objection to any communications between White
25   & Case and the witness.  My understanding is that

1                  Dr Adam Farkas
2    White & Case is representing the witness, whether
3    that is in his capacity as an individual or in his
4    capacity as a former member of the audit committee
5    to me is irrelevant, there is still an
6    attorney/client relationship there, and any
7    communications between White & Case and the
8    witness are privileged.
9              MR SULLIVAN:  We have seen numerous
10   documents that have included representations by
11   White & Case in board of directors meetings, there
12   have been numerous questions that you asked about
13   what White & Case advised Dr Farkas, so we going
14   to reserve that objection.  Are you directing the
15   witness not to answer?
16             MR DODGE:  It is not for me to
17   direct him to not answer.  I think that is for
18   Mr Currier to do.
19             What I will say for the record,
20   though, is that Magyar Telekom has waived
21   attorney/client privilege with respect to the
22   internal investigation at White & Case -- internal
23   investigation at Magyar Telekom in 2006, 2007, but
24   to my understanding there is no waiver of any
25   privilege with respect to the representation of

1                    Dr Adam Farkas

2    Dr Farkas at this deposition.

3              MR KOENIG:  Well, I just want to

4    put on the record, though, I do not think you can

5    select -- there is no such thing as selective

6    waiver.  I also recall that Dr Farkas very

7    specifically earlier in his testimony started to

8    say the precise advice White & Case had given on

9    other matters, which also constitutes a waiver of

10   attorney/client privilege.

11             MR CURRIER:  I do not think he ever

12   said that -- anything with regard to the specific

13   privilege of information that we conveyed in the

14   course of our communication with him alone or with

15   others subject to the privilege, and anything that

16   happened at the board meeting itself, obviously,

17   had other people present.

18             And with regard to this no question

19   has been directed to obtain a document prepared by

20   counsel to prepare Dr Farkas who was here in his

21   capacity as a former chairman, and that is the

22   capacity which we represent him in that status and

23   we did, indeed, prepare materials to help him get

24   ready for these proceedings.  We consider it

25   privileged.  I am instructing him not to answer

1       Dr Adam Farkas

2  any questions regarding that topic.

3             MS LANE:  So my question, I am

4  getting back to my questions, perhaps I

5  misunderstood, I was asking for any documents that

6  Mr Dodge or representatives from the SEC had given

7  you to help you prepare for this deposition.  I am

8  not asking right now about documents provided to

9  you by your own counsel.

10       Q.    Did the SEC provide any documents

11  to you to prepare for this deposition?

12       A.    Well, I...

13             MR CURRIER:  Can I have a moment?

14  (Pause while Mr Currier and the witness confer)

15             (Off the record at 4.01 pm)

16             (On the record at 4.04 pm).

17  BY MS LANE:

18       Q.    Dr Farkas, did you need the

19  question read back to you?

20           (Preceding question read back)

21       A.    Mr Dodge provided me with a list of

22  exhibits or a list of potential exhibits,

23  including the documents themselves.  I was

24  provided via counsel, but it was sent by the SEC

25  for my preparation last week ahead of the

1                    Dr Adam Farkas

2     they define rules, protective rules to limit the

3     excess -- the management and the processing of

4     this personal data for various purposes.  So that

5     is the -- I would say that is the framework of

6     these rules.

7            Q.     To your knowledge are there any

8     penalties in the Hungarian data protection law for

9     people that violate that law?

10           A.     Yes, of course, in line with the

11    European rules.

12           Q.     And what are those penalties?

13           A.     These penalties -- in extreme cases

14    they can be criminal penalties.  So I would say

15    the data protection rules are relatively strictly

16    defined.

17                 MR HILL:  At some time in the next

18    five minutes or so can we take a break?

19                 MS LANE:  Can you wait 15 minutes.

20    Do you want to do it now?  I have no preference.

21                 MR HILL:  Let us do it now.

22             (Off the record at 5.10 pm)

23             (On the record at 5.25 pm)

24                 MR SULLIVAN:  Before we begin I

25    have to make a request, it has come to my

1           Dr Adam Farkas
2  attention that during the last period of time
3  during which Dr Farkas was testifying, in the last
4  third or so, there was a note passed from Mr Dodge
5  to counsel for Mr Farkas at White & Case. Unless
6  I am missing something that would not be a
7  privileged communication, so we would request
8  production of that note as soon as possible.
9           MR CURRIER: Understood --
10          MR SULLIVAN: So when did you think
11 soon is?
12          MR CURRIER: -- it means you will
13 have it by the next break.
14          MR SULLIVAN: Thank you.
15          MR CURRIER: It is not a relevant
16 communication.
17          MR SULLIVAN: Maybe so, but we
18 would like to see it. Thank you.
19          MR CURRIER: I want to put on the
20 record that Dr Farkas would like to correct a fact
21 from his testimony that you were enquiring about.
22          THE WITNESS: I would like to
23 apologise. I made one mistake on a specific date
24 which I got advised from White & Case that I was
25 mistaken and I would like to correct that. It was

1                      Dr Adam Farkas

2    the record for a moment. You probably should to

3    switch seats with me.

4              (Off the record at 6.33 pm)

5              (On the record at 6.43 pm)

6             MR DODGE: Before we resume the

7    testimony a request was made, I believe it was on

8    the record at an earlier point, this is Bob Dodge,

9    by the way, speaking, the request was for the

10    attorneys at White & Case to turn over a note that

11    I wrote to Mr Currier. The note was delivered in

12    the context of a discussion about, I believe it

13    was a request for the witness to provide copies of

14    billing statements if my recollection is clear. I

15    wanted to get a couple of things on the record.

16    The first is that I am aware of no legal basis

17    for -- that defence counsel take discovery of my

18    communications with counsel from White & Case,

19    however, in the interests of making it clear on

20    the record that there was nothing improper in the

21    note I will read the note into the record and

22    provide the original note to Mr Sullivan. The

23    note I wrote to Mr Currier states:

24              "The court lacks jurisdiction over

25    Farkas. He can provide docs voluntarily, but

1  Dr Adam Farkas
2  there is no obligation.  You can just take the
3  request under advisement."
4  My intent in writing the note was
5  simply to simplify what had been, sort of, an
6  ongoing discussion over privilege issues.
7  Mr Sullivan, here is the note and with that I will
8  return the microphone to you for you to resume
9  your questioning.
10  MR SULLIVAN:  I have my own mic,
11  but thanks for the note.
12  Good evening, Dr Farkas, I
13  appreciate your patience tonight.  I am going to
14  try to be as focused and as succinct as possible.
15  A.  Thank you very much. I am at your
16  disposal.
17  Q.  I appreciate that. I am
18  Bill Sullivan. I have two lawyers here assisting
19  me.  We represent Mr Balogh, as you know.
20  A.  That is my understanding.
21  Q.  Dr Farkas, you are an accomplished
22  man, fair to say?
23  A.  I think it is not for me to judge.
24  Q.  Well, let me say it, that you have
25  a PhD in finance and you attained that PhD summa